# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Randall Simmons, *individually and on behalf of others similarly situated*,

                Plaintiffs,

                           Case No. 1:25-cv-2409-MLB

v.

Home Depot USA, Inc.,

                Defendant.

_____/

## OPINION & ORDER

For the reasons set forth below, the Court **GRANTS** Defendant Home Depot USA, Inc.'s Motion to Dismiss. (Dkt. 9.)

## I.    Background Facts

Home Depot rents tools and equipment. (Dkt. 1 ¶ 3.) To do this, customers execute an Equipment Rental Agreement upon checkout. (*Id.* ¶¶ 2, 8.) As part of the process, Home Depot offers a damage protection service that "relieves renter[s] of repair charges, replacement charges, or administrative charges" if they damage the rented equipment. (*Id.* ¶ 6.) Home Depot's system adds damage protection as the default election,

thus requiring customers to decline coverage at checkout to avoid the charge. (*Id.* ¶ 4.)

Home Depot also permits customers to reserve rental equipment online. (*Id.* ¶ 1.) When doing so, customers may indicate if they want to accept or decline damage protection. (*Id.* ¶ 8.) Customers, however, do not sign the equipment rental agreement until they come to the store and checkout the equipment. (*Id.* ¶¶ 6–8.) So, again, they must decline that coverage at checkout or pay the charge.

On April 7, 2025, Plaintiff Randall Simmons reserved a tiller online. (*Id.* ¶ 5.) He declined damage protection. (*Id.* ¶ 8.) A couple of days later, Plaintiff went to a Home Depot store in Pelham, Alabama to pick up the tiller. (*Id.*) At checkout, Plaintiff received the rental agreement. (*Id.*) The first page listed Plaintiff's charges, including $8.85 for damage protection. (Dkt. 9-2 at 2.)[1] Plaintiff signed that page of the agreement. (*Id.*)

---

[1] Plaintiff did not attach the front page of the agreement to his complaint, only attaching his final invoice and the terms and conditions of the agreement. (Dkt. 1-1.) The Court, however, can consider the first page of the agreement, which Home Depot attaches to its Motion to Dismiss, under the incorporation-by-reference doctrine because the agreement is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its

Plaintiff contacted Home Depot's corporate headquarters to dispute the charge. (Dkt. 1 ¶ 10.) An assistant manager at the Pelham store said the default setting was "wrong" and he would "retrain employees." (*Id.* ¶ 12.) The manager told Plaintiff the store defaults to include damage protection, but customers may remove that charge at checkout. (*Id.* ¶ 13.) Both employees offered him free rentals, but he refused. (*Id.* ¶¶ 12, 13.)

Plaintiff sued Home Depot for breach of contract on behalf of himself and two classes (one including people who rented tools or equipment from Home Depot in Georgia under similar contracts and the other including people who rented tools or equipment from Home Depot stores anywhere in the nation under similar contracts). (*Id.* ¶¶ 20, 30–34.) He says Home Depot breached his and the class members' rental agreements by setting damage protection as the default election and charging them for that protection without requiring them to opt into it. (*Id.*)

Home Depot moves to dismiss, and Plaintiff opposes. (Dkts. 9, 14.)

---

authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

## II.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This requires more than a "mere possibility of misconduct." *Id.* at 679.  Plaintiff's well-pled allegations must "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    Discussion

The elements of a breach of contract claim in Georgia are "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (citations omitted).  Under Georgia law, dismissal of a breach of contract claim "is appropriate if the court finds that no possible relief can be granted under any construction of the contract sued upon." *Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc.*, 826 F. Supp. 460, 464 (N.D. Ga. 1993).  O.C.G.A. § 13-2-1 provides that "[t]he

construction of a contract is a question of law for the court." The Court "may apply the rules of construction and attempt to interpret a contract on a motion to dismiss, but after doing so, the Court may not decide what the contract means if the language is still ambiguous." *Automated Sys. Am., Inc. v. Worldpay US, Inc.*, 2017 WL 8366141 at *3 (N.D. Ga. July 24, 2017). At that point, "the contract could plausibly support one party's interpretation or the other party's interpretation, [and] [i]t would be improper for the Court to resolve such an ambiguity." *Id.*

So Home Depot can only prevail on its motion to dismiss if it demonstrates the relevant contract terms are unambiguous and Plaintiff's allegations cannot plausibly state a claim for breach of that contract.

## A.    The Contract Did Not Require Affirmative Election of Damage Protection

Plaintiff claims Home Depot violated the rental agreement by "defaulting all customers to opting into damage protection despite the contract making it clear that the damage protection is optional and must

be selected." (Dkt. 1 ¶ 9.)[2]  Specifically, he contends Home Depot violated Section 4(I)(b) of the contract because, under that section, "for [Plaintiff] to have been charged," he "must have affirmatively selected damage protection"—and he did not.  (Dkt. 14 at 6.)  Home Depot reads that section differently.  It argues it did not breach the agreement by pre-opting customers into damage protection because Section 4(I)(b) of the agreement merely required Home Depot to give customers the option to accept or decline damage protection.  (Dkt. 9-1 at 8–11.)  In other words, under Home Depot's reading, it satisfied Section 4(I)(b) by simply offering customers the chance to remove damage protection and Plaintiff failed to exercise that option, even though he "had every opportunity to decline that charge" up until the moment of checkout.  (*Id.* at 7.)

At its core, this is a dispute regarding the proper interpretation of Section 4(I)(b).  If it required Home Depot to receive an affirmative acceptance of damage protection before imposing the charge, Home Depot breached the contract.  On the other hand, if Section 4(I)(b) merely

---

[2] Plaintiff sometimes refers to the default setting as "force placing" the damage protection into the rental agreement.  (Dkt. 1 ¶¶ 3, 11, 12, 22, 24.)

obligated Home Depot to give customers the *option* to decline damage

protection, Home Depot did not breach the agreement by including

protection as the default setting and charging Plaintiff—who did not opt

out at checkout.

Section 4(I)(b) of the agreement provides in pertinent part:

> Tool damage protection is an ***optional*** service offered by The Home
> Depot that, ***if selected***, modifies this Agreement to relieve Renter
> of repair charges, replacement charges or Administrative Charges
> if the Equipment is damaged during normal use during the Rental
> Period ("Tool Damage Protection"). Renter ***must accept or decline***
> the Tool Damage Protection. In the event Renter ***elects*** Tool
> Damage Protection services: (i) the charge for Tool Damage
> Protection is 15% of the Rental Price and will appear as a separate
> line-item on the Agreement and on the invoice; and (ii) Tool
> Damage Protection does not cover loss of or damage to tools and large
> equipment caused by anything other than normal use, including
> damage caused by theft, abuse, misuse, neglect, or intentional acts.

(Dkt. 1-1 at 4) (emphasis added).  The main bone of contention over this

section is the effect of the terms in bold.  Plaintiff insists that the phrases

"optional," "if selected," "must accept or decline," and "elects" contemplate

"an affirmative opt-in on damage protection."  (Dkt. 14 at 9.)  But his

reasoning is largely conclusory, and Plaintiff makes little effort to explain

how those terms impose a requirement of affirmative acceptance rather

than simply obligating Home Depot to provide a choice before charging for damage protection.

Home Depot seizes on Plaintiff's thin reasoning in its Reply Brief. It addresses each of the four bolded terms, explaining why they neither require an affirmative opt-in nor prohibit damage protection as a default setting. (Dkt 15 at 4–6.) Citing Black's Law Dictionary, Home Depot argues the term "optional" only requires it to give Plaintiff "the right or power to choose" damage protection, precisely what it did. (*Id.* at 5.); *see* OPTION, Black's Law Dictionary (12th ed. 2024) ("Option" means "[t]he right or power to choose; something that may be chosen.") Home Depot also notes the phrase "if selected" does not mention default settings or whether the selection must be affirmative. (*Id.*) Home Depot argues, the phrase "merely requires the customer to select damage protection (or not) when entering the agreement." (*Id.*) Next, Home Depot contends the phrase "must accept or decline" does not require a customer to accept affirmatively damage protection. (*Id.*) This is because a customer can passively "accept" damage protection—"by reviewing the agreement … and then signing" it with the charge selected by default—without running afoul of the plain meaning of "accept." (*Id.*) Finally, Home Depot

8

contends the language in Section 4(I)(b) reading "in the event Renter *elects* damage protection" still does not prohibit Home Depot from making "acceptance" the default choice.  (*Id.* at 6.)  It reasons that, even if Home Depot sets damage protection as the default, it remains "elective" because "[n]o one forced Plaintiff to sign an agreement reflecting a damage protection charge [and] … customers may ask Home Depot to remove the estimated charge before [they] sign."  (*Id.*)

The Court agrees with Home Depot's interpretation of Section 4(I)(b).  The plain, unambiguous terms of that section neither require a customer to affirmatively select damage protection before being charged for it nor prohibit Home Depot from designating it as the default election.  Rather, Section 4(I)(b) just requires that damage protection remain an "optional service."  So long as Home Depot provided customers with the ability to opt out of damage protection, there can be no doubt that the charge was "optional" within the plain meaning of that term.  *See* OPTION, *Black's Law Dictionary* (12th ed. 2024).  The other terms Plaintiff identifies do not change this.  One can "accept," "elect," or "select" a service without taking any affirmative action.  Embedded in Plaintiff's argument is an assumption that "selecting," "accepting," or

"electing" the coverage must be done—not only as an affirmative step—but that doing so must be a separate step that occurs before execution of the contract. Perhaps Plaintiff envisions a box to be clicked. Nothing in the contract required that. So, even if the contract required affirmative acceptance, Plaintiff fails to explain how the execution of the agreement—with the explained charge clearly listed—does not amount to an affirmative "selection," "election," or "acceptance."

Further, the Court finds no textual support for Plaintiff's argument that Section 4(I)(b) prohibits Home Depot from making damage protection the default selection. (Dkt. 1 ¶ 9.) The contract makes no mention of default settings and the presence of a default does not change the optional nature of the charge. It may be sneaky to include this charge as the default and to require renters to notice and remove it, but the agreement does not preclude this.

Having found the contract language "clear and unambiguous, [] the Court simply enforces the contract according to its clear terms." *CareAmercia, Inc. v. S. Care Corp.*, 494 S.E.2d 720, 722 (Ga. App. 1997). Those terms did not bar the conduct that Plaintiff complains of in this case. Home Depot fulfilled its obligations under Section 4(I)(b) by giving

Plaintiff the option to decline damage protection prior to consummating the agreement. He signed the agreement with the damage protection charge in place—thus signaling his selection or acceptance of the coverage—and cannot object now that Home Depot wants to enforce the terms to which he agreed.

### B.    Plaintiff's Online Reservation Was Not Part of His Rental Agreement

Although not spelled out clearly, Plaintiff seems to allege Home Depot also breached the agreement because he declined damage protection while reserving the tiller—four days prior to renting it—but Home Depot nevertheless "force placed" the charge in the final agreement he signed.[3] (Dkt. 1 ¶ 8.) Accepting this allegation as true, as the Court must at this stage, this could (in the abstract) constitute a breach of

---

[3] The Court cannot tell whether Plaintiff alleges this "force placement" was an independent breach of the agreement or simply an example of the breach alleged elsewhere in the class complaint. The complaint alleges this "is a case about Defendant's breach of contract in defaulting all customers to opting in to damage protection despite the contract making it clear that the damage protection is optional and must be selected." (Dkt. 1 ¶ 9.) That is the breach theory already discussed. If Plaintiff exercised his option to decline damage protection and his decision was not honored, however, that could be a different breach theory. To the extent the Court misunderstands Plaintiff's theory (or theories), the fault lies with Plaintiff.

Section 4(I)(b) regardless of whether that Section required affirmative opt-in or prohibited Home Depot from defaulting customers to damage protection.  In other words, if Plaintiff declined damage protection, but was charged for it anyways, that service would not be "optional."  (Dkt. 1-1 at 4.)  But this theory of breach assumes Plaintiff's elections during his online reservation were "part of the agreement."  (Dkt. 14 at 11.)

Home Depot argues they were not.  It says Plaintiff's allegation "does not plausibly suggest a breach because the agreement includes a merger clause," which supersedes conduct "that supposedly happened online and before the parties signed the agreement."  (Dkt. 9-1 at 17.)[4] Put differently, Home Depot contends that "whatever Plaintiff may have done when reserving his tool is irrelevant to his breach-of-contract claim." (Dkt. 15 at 8.)  Plaintiff responds that his online reservation was "part of the agreement" because "one cannot divorce" the reservation process from the agreement, given that the customer's selections made

---

[4] The merger clause reads as follows: "This Agreement represents the entire agreement between The Home Depot and Renter. This Agreement may not be amended or modified except in writing signed by both parties. This Agreement supersedes any prior written or oral agreements between the parties."  (Dkt. 1-1 at 8.)

during the online reservation ultimately carry over into the agreement. (Dkt. 14 at 11.)  The Court disagrees with Plaintiff.

According to the Georgia Supreme Court, "in written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties." *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. 2001).  "The purpose of a merger clause is to preclude any unilateral modification of a written contract through evidence of pre-existing terms which were not incorporated therein." *Thomas v. Garrett*, 456 S.E.2d 573, 575 (Ga. 1995).  That is exactly what Plaintiff tries to do here.  He bases his claim on the existence of a "pre-existing term[]"—the exclusion of damage protection—that did not make it into the final agreement. *Id.* And, as Home Depot correctly observes, "[t]hat is a textbook definition of [what] a merger clause supersedes."  (Dkt. 9 at 17.)  If Plaintiff did not want damage protection, he had the opportunity to decline it before signing that agreement.  He did not.  Accordingly, Plaintiff's alleged declination of damage protection while making his reservation "cannot be used to vary the terms of [the] valid written agreement purporting to

contain the entire agreement of the parties." *First Data POS, Inc.*, 546 S.E.2d at 784.

## IV.  Conclusion

The Court finds Plaintiff fails to state a claim because "no possible relief can be granted under any construction of the contract sued upon." *Breckenridge Creste Apartments, Ltd.*, 826 F. Supp. at 464.  Under its unambiguous terms, Home Depot did not breach the agreement when it: (1) charged Plaintiff for damage protection without an affirmative opt-in; (2) set damage protection as a default election for customers; or (3) included damage protection in Plaintiff's final agreement, despite his alleged declination of that charge while reserving the tiller online.[5]  For the same reasons, there is no viable class claim for those who "rented under a form contract substantially similar to Plaintiff's form contract [] from any Home Depot . . . and w[ere] charged a fee for damage protection, but did not expressly opt in or select damage protection"—his class

---

[5] Because the Court finds Home Depot did not breach the agreement, it need not address its argument that Plaintiff's claim is barred by Georgia's voluntary payment doctrine.  (Dkt. 9-1 at 19–21.)

14

definitions.  (Dkt. 1 ¶ 20.)  The Court thus **GRANTS** Home Depot's
Motion to Dismiss.  (Dkt. 9.)

Plaintiff's response brief includes a vague, perfunctory request to
amend his complaint in the event the Court grants Home Depot's motion.
(Dkt. 14 at 16.)  But, "where a request for leave to file an amended
complaint simply is imbedded within an opposition memorandum, the
issue has not been raised properly." *Rosenberg v. Gould*, 554 F.3d 962,
967 (11th Cir. 2009).  "Filing a motion is the proper method to request
leave to amend a complaint." *Long v. Satz*, 181 F.3d 1275, 1279 (11th
Cir. 1999).  Even then, the motion must "(1) set forth the substance of the
proposed amendment, or (2) attach a copy of the proposed amendment to
the motion." *Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 902 (11th
Cir. 2020).  Again, Plaintiff has done neither of these things.  So the Court
denies leave to amend.  *See Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d
1151, 1157 (11th Cir. 2018) ("[Plaintiff] failed to properly move for leave
to amend, and the district court soundly rejected the infirm request.");
*Britton ex rel. U.S. v. Lincare Inc.*, 634 F. App'x 238, 241 (11th Cir. 2015)
(district court properly dismissed complaint without leave to amend

because plaintiff "failed to set forth how he would amend his complaint to comply with Rule 9(b)").

**SO ORDERED** this 9th day of January, 2026.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE